```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ECKO.COMPLEX LLC d/b/a              :
ECKO UNLTD.,                        :
                                    :
            Plaintiff,              :
                                    :
        - v. -                      :
                                    :
MICHAEL R. BLOOMBERG,               :    05 Civ. 7335 (JSR)
Mayor of the City of New York;      :
JONATHAN GREENSPUN,                 :    OPINION AND ORDER
Commissioner of the Community       :
Assistance Unit, Office of the      :
Mayor, City of New York, in their   :
individual capacities; and          :
THE CITY OF NEW YORK,               :
                                    :
            Defendants.             :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

The facts of this case are simple. Plaintiff Ecko.Complex LLC d/b/a Ecko Unltd. ("Ecko") is a fashion company, whose founder and chief executive officer, Marc Ecko, has a passion for graffiti, as well, it would seem, for making money. Nearly a year ago, Ecko initiated the process of applying for a street permit to host an outdoor art exhibition and demonstration in Chelsea, at which 20 artists who, like Marc Ecko, began their careers as graffiti artists in New York and now have achieved renown, would paint graffiti on the panels of tractor-trailer trucks, later changed to mock, two-dimensional subway cars. After clearing numerous hurdles, including approval by the local community board, Ecko received, on or about July 18, 2005, permit number M04-042, which permitted Ecko to conduct the art

demonstration on August 24, 2005, on 22nd Street between 10th and 11th Avenues in Manhattan, from 10 a.m. to 6 p.m.  <u>See</u> Permit to Conduct Street Activity, 7/18/05, attached as Ex. J to Declaration of Daniel M. Perez, 8/18/05 ("Perez Decl.").

Thereafter, questions were raised as to whether the exhibition was actually a commercial event, intended to promote a forthcoming Ecko video game involving graffiti, in which case Ecko would, for example, have to pay a larger fee for the permit than would otherwise be the case.  Ostensibly on this ground, the City wrote to Ecko on or about August 15, 2005, revoking the permit.  <u>See</u> Letter from Greenspun to Reinitz, 8/15/05, attached as Ex. N to  Perez Decl.

The next day, however, the City wrote a second letter to Ecko specifically objecting to the painting of graffiti on the mock subway cars because "this method of display would incite criminal behavior."  <u>See</u> Letter from Greenspun to Reinitz, 8/16/05, attached as Ex. O to Perez Decl.  That this was the City's primary motivation in revoking the permit was made evident that same day when Mayor Bloomberg, as quoted in the New York Times, stated: "This is not really art or expression, this is, let's be honest about what it is: It's trying to encourage people to do something that's not in anybody's interest."  Jim Rutenberg, <u>City Revokes Party Permit Over Exhibit With Graffiti</u>, N.Y. Times, Aug. 16, 2005, at B5.  Subsequently, the Mayor made

similar public statements in other forums.  See, e.g., <u>Live from City Hall with Mayor Mike and John Gambling</u> (WABC (N.Y.) radio broadcast Aug. 19, 2005), available at http://www.ci.nyc.ny.us/html/om/html/2005b/media/abcrs081905.asx ("Mayor's 8/19/05 Radio Interview").  Furthermore, the August 16th letter specifically rejected a second permit application that Ecko had submitted in response to the purported "commercial" objection, and the <u>sole</u> reason stated in the August 16th letter for rejection of the second application was that the proposed graffiti painting on subway cars presented too great a risk of inciting criminal behavior.  <u>See</u> Letter from Greenspun to Reinitz, 8/16/05, attached as Ex. O to Perez Decl.  At oral argument today, the City once more reconfirmed that this is its sole objection.

It is not disputed that Ecko had already spent a great deal of time and money preparing for the August 24 exhibition.  <u>See</u> Affirmation of Miryam Reinitz, 8/18/05, ¶ 42, attached as Ex. A to Perez Decl.  With 20 famous artists scheduled to appear on that date, it could not postpone the exhibition without suffering irreparable harm.  <u>See</u> <u>id.</u> at ¶ 41.  In addition, as the City concedes, the deprivation of a First Amendment right constitutes irreparable injury for purposes of a motion for preliminary injunction.  <u>See</u>, <u>e.g.</u>, <u>Bery v. City of New York</u>, 97 F.3d 689, 693 (2d Cir. 1996).

Accordingly, last Thursday, August 18, 2005, Ecko came to

3

this Court seeking, on an expedited basis, an order compelling the City to re-issue permit number M04-042 or to issue its equivalent, so that the exhibition could go forward as planned. The City, though not challenging the Court's jurisdiction and authority to grant such relief, opposed on the grounds, principally that Ecko had not shown a likelihood of success on the merits.

An initial hearing was held on Friday, August 19, at which both sides agreed that, for purposes of this motion, no evidentiary hearing was necessary and the Court could rely on the exhibits submitted by the respective parties in determining the facts. See transcript, 8/21/05. Importantly, Ecko also represented, unequivocally, that it would not include at the exhibition any materials promoting its forthcoming video game involving graffiti. Id.; see also Letter from Reinitz to Duran, 8/15/05, attached as Ex. M to Perez Decl. After receiving answering papers from the City, the Court heard further argument on Monday, August 22, 2005.

The Court now grants Ecko's application and reinstates permit number M04-042.

The City's claim that the exhibition is substantially a commercial event was of doubtful substance when first raised, but now, given Ecko's concessions, it is of no material substance whatever. What Ecko wishes to sponsor, pure and simple, is a

4

graffiti art exhibition with little or no commercial speech of any consequence. In particular, the only exercise of free expression of which the City complains, to wit, the painting of graffiti on mock subway cars, has no commercial content and no direct commercial purpose at all. Ecko will, of course, reap the goodwill of being touted as the corporate sponsor, and, like many such sponsors, intends to retain painted panels for future display at its premises; but such incidental benefits of commercial sponsorship do not transform a display of artistic endeavor into a commercial activity. See N.Y. State Ass'n of Realtors, Inc. v. Shaffer, 27 F.3d 834, 840 (2d Cir. 1994) ("[T]he mere fact that the speech at issue has an economic motivation or is conceded to be advertisement is not by itself sufficient to convert that speech into commercial speech.") (internal quotations omitted). Furthermore, over the many months that the City considered every aspect of the proposed exhibition prior to issuing the permit, never once did it suggest that it was a commercial event not qualifying for the kind of permit issued.

The belated raising of the "commercial" objection in mid-August was, the Court infers, simply a facade for what the City implicitly admits is its only real objection, i.e., its objection to the painting of graffiti on mock subway cars. Indeed, in the course of oral argument, the City has repeatedly represented

that, if the mock subway cars were removed, some sort of permit would issue allowing the exhibition to go forward as scheduled. See transcript, 8/19/05; see also Letter from Greenspun to Reinitz, 8/16/05, attached as Ex. O to Perez Decl.

So, the only real issue is whether the City can lawfully proscribe an otherwise-approved public art exhibition on its streets because that exhibition involves painting graffiti on mock subway cars. The City does not suggest, nor could it, that such painting is itself a crime, since the "subway car" panels are plainly mock-ups. But it claims to have the right to censor this exercise of free expression because, in the words of the Mayor on his radio program last Friday, the exhibition is tantamount to "encouraging vandalism." Mayor's 8/19/05 Radio Interview. By the same token, presumably, a street performance of <u>Hamlet</u> would be tantamount to encouraging revenge murder. Or, in a different vein, a street performance of "rap" music might well include the singing of lyrics that could be viewed as encouraging sexual assault. As for a street performance of <u>Oedipus Rex</u>, don't even think about it.

The First Amendment would be a weak reed indeed if the utterance of such expressions could be banned from the City's streets because, in the Mayor's view, "It's trying to encourage people to do something that's not in anybody's interest." Rutenberg, <u>supra</u>. Such heavy-handed censorship would, moreover,

fall particularly hard on artists, who frequently revel in breaking conventions or tweaking the powers that be.

No one suggests, of course, that the actual painting of graffiti on subway cars is to be condoned. Nor can it be denied that this crime can have a "faddish" aspect that may make it difficult to deter. The constitutionally permissible solution is to prosecute those who actually commit this crime to the full limits of the law; but not to ban those who, for artistic reasons or otherwise, choose to make use of this motif, in mock form, as the mode of their expression.

In short, the denial of the permit on the stated grounds that the demonstration will "incite" others to actually paint graffiti on subway cars is a flagrant violation of the First Amendment and cannot stand. See Brandenburg v. Ohio, 395 U.S. 444 (1969) (even flatly advocating a violation of law cannot be banned unless it is intended and likely to produce "imminent lawless action").

It remains only to add that there does not appear to be any basis in the City's own ordinances for denying a permit on this ground. The relevant regulation is Section 1-07 of Title 50 of the Rules of the City of New York, entitled "Approval or Denial of Applications by the Street Activity Permit Office." 50 R.C.N.Y. § 1-07. Nowhere on its face does that section directly purport to govern the content of the street activities for which

permits are sought; indeed, such a provision would probably be unconstitutional on its face. Nor does the section speak anywhere about forbidding activity that is likely to "incite" criminal activity – not that there has been the slightest showing here that such incitement would likely occur.

The section does include a catch-all provision of a kind that authorizes denial of a permit if "approval of the application is not in the best interest of the community, City or general public for reasons that may include, but are not limited to, lack of good character, honesty, integrity or financial responsibility of the sponsor." Id. § 1-07(c)(4). Here, the "good character" and such of the sponsor are not in question. The unspecified other reasons on which an application may be denied cannot be stretched to include proscriptions of particular content of expression, for otherwise the provision would be unconstitutionally vague. Cf. Million Youth March v. Safir, 155 F.3d 124 (2d Cir. 1998). Consequently, in revoking the permit here, the City acted not only unconstitutionally but also beyond its prescribed powers.

For the foregoing reasons, the Court reinstates permit number M04-042 and orders the City, on pain of contempt, to effectuate it and enable the Ecko street activity scheduled for August 24, 2005 to occur as planned.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:    New York, New York
            August 22, 2005